

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

BLAKE ATLAS BILLUPS )
℅ 1147 Brook Forest Avenue No. 350 )
Shorewood, Illinois )
      *Plaintiff*, )
)
v. )
)
CODY CAMMACK, in his individual ) No.    1:22-cv-03507
capacity and official capacity as VILLAGE )        **Judge John F. Kness**
OF BOLINGBROOK Police Officer )        **Magistrate Judge Susan E. Cox**
375 West Briarcliff Rd Bolingbrook, IL )        **RANDOM**
60440, *and*

JEFFREY JUERGENS, in his individual
capacity and official capacity as VILLAGE
OF BOLINGBROOK Police Officer
375 West Briarcliff Rd Bolingbrook, IL
60440, *and*

LORI SHERMAN, in her individual
capacity and official capacity as WILL
COUNTY Deputy Circuit Clerk
100 W. Jefferson Street Joliet, IL 60432,
*and*

LAUREN SENKO, in her individual
capacity and official capacity as WILL
COUNTY Assistant State's Attorney
58 N Ottawa Street Joliet, IL 60432, *and*

FREDERICK VINCENT HARVEY, in his
individual capacity
13545 Haley Road Manhattan, IL 60442,
*and*

H. CUNNINGHAM n/k/a HENRY
CUNNINGHAM, in his individual
capacity and official capacity as VILLAGE
OF BOLINGBROOK police officer
375 West Briar Cliff Road Bolingbrook, IL
60440, *and*

**FILED**

JUL 06 2022 

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

1

AMANDA R MICHALEK, in her individual capacity and official capacities as NOTARY PUBLIC STATE OF ILLINOIS
and WILL COUNTY STATE'S ATTORNEY legal secretary
519 Knox Place Joliet, IL 60435

_____ *Defendants.* _____

## COMPLAINT AND DEMAND OF TRIAL BY JURY

**COMES NOW** the Plaintifft, Blake Atlas Billups, and complains of the defendants as follows:

### INTRODUCTION

1. This action is brought pursuant to the Ku Klux Klan Act, ch. 22, § 1, 17 Stat. 13, the Act of July 31, 1861, ch. 33, 12 Stat. 284, and the Act of April 9, 1866, ch. 31, §3, 14 Stat. 27 as codified at 42 USC §1983, 42 USC §1985 and 42 USC §1988, respectively, to redress the deprivation of the plaintiff's protected rights under the Constitution for the United States of America, under the color of law by the Defendants.

2. As a result of the abuse of police powers, conspiracy, police misconduct, fraud and abuse more fully clarified below, the plaintiff was trespassed against, falsely imprisoned and suffered other injuriess.

### JURISDICTION AND VENUE

3. This Court has jurisdiction of the action pursuant to 28 USC § 1331 (as this action involves a federal question and the laws of the United States) and 28 U.S.C. Section § 1343 (as this action involves the right to recover damages for injury and the deprivation of rights and privileges).

4. This Court also has supplemental jurisdiction pursuant to 28 U.S.C. Section § 1367 over Plaintiff's state-law claims that are related to and form part of the same case or

2

controversy. It is appropriate that this Court exercise supplemental jurisdiction over the state law claims because they involve the same parties and operative facts as the federal claims. Therefore, the Court's use of supplemental jurisdiction will aid in the fair administration of justice to the parties.

5. Venue is proper pursuant to 28 USC § 1391(b) as this is the judicial district in which a substantial part of the events giving rise to the claim occurred.

6. The Plaintiff requests a trial by jury pursuant to Fed. R. Civ. P. 38.

## THE PARTIES

7. The Plaintiff, Blake Atlas Billups, was at all relevant times present within the physical boundaries of this court's territorial jurisdiction.

8. Defendant, Cody Cammack and at all times relevant was acting as a VILLAGE OF BOLINGBROOK police officer within the scope of his employment. Cammack is sued in his individual and official capacities.

9. Defendant, Jeffrey Juergens was at all times relevant acting as a VILLAGE OF BOLINGBROOK police officer within the scope of his employment. Juergens is sued in this action in his individual and official capacities.

10. Defendant, Lori Sherman was at all times relevant acting as a deputy circuit clerk for the State of Illinois' Twelfth Judicial Circuit Court located at Will County. Sherman is sued in her individual and official capacities.

11. Defendant, Lauren Senko, at all times relevant was acting as an Assistant State's Attorney for the COUNTY OF WILL within the scope of her employment. Senko is sued in her individual and official capacities.

12. Defendant, Frederick Vincent Harvey, at all times relevant was acting outside the scope of his employment as a State of Illinois Associate Judge and as such is sued in his individual capacity.

13. Defendant, Henry Cunningham, at all times relevant was acting as a VILLAGE OF BOLINGBROOK police officer within the scope of his duties. Cunningham is sued in his individual and official capacities.

14. Defendant, Amanda Michalek, at all times relevant was acting as a Notary Public for the state of Illinois and a legal secretary for the COUNTY OF WILL State's Attorney Office. Michalek is sued in her individual and official capacities.

## STATEMENT OF FACTS

15. On or about May 2nd, 2022 at approximately 7:30pm the Plaintiff was on duty as a fugitive apprehension and recovery agent for U.S. Investigations and Protection National.

16. While on duty, the Plaintiff was investigating a lead that reasonably could have lead to the rearrest of a fugitive in relation to a federal warrant.

17. As a part of the investigation, the Plaintiff was following the subject of the investigation in his car.

18. The subject was observed traveling south on Historic U.S. 66 Frontage Road near Bolingbrook, Illinois.

19. At the crossroads of Venetian Road and Historic U.S. 66 Frontage, near Bolingbrook, Illinois, the Plaintiff saw the Defendants, Cammack and Juergens, traveling in a black colored Ford Taurus heading south on the frontage road.

20. As the Defendants passed the Plaintiff, who was stationary at the crossroads preparing to follow the subject of his investigation, the Plaintiff saw Juergens, who was sitting in the front-right-side seat of the Ford Taurus, look at him.

21. The Plaintiff then began to travel south on Historic U.S. 66 Frontage behind an unknown automobile which was between him and the Defendants.

22. At the crossroads of the frontage road and U.S. Route 53, on the northwest quadrant, exists a Denny's Restaurant and a Shell Gas Station which share ingress, egress, and a parking lot area.

23. As the Plaintiff approached the crossroads of the frontage road and U.S. Route 53, he saw the Defendants had turned into the aforementioned parking lot and were stationary facing south.

24. As the Plaintiff stopped at the crossroads and waited for west bound cars and trucks to clear, he saw the Defendants move back onto the frontage road.

25. At the crossroads of U.S. Route 53 and the frontage road, the Plaintiff saw the subject of his investigation enter south bound Interstate 55.

26. The Plaintiff made a right hand turn onto U.S. Route 53 heading west and positioned his car in the left most turn lane at the crossroads of the Route 53 and Remington Boulevard in order to follow the subject.

27. The Plaintiff made a 180-degree left hand turn onto east bound U.S. Route 53 and made a right hand turn thereafter onto south bound Interstate 55 to follow the subject.

28. The Plaintiff saw the Defendants pass and weave around several cars until they were positioned directly behind the Plaintiff on the on ramp to the highway.

29. The Defendants immediately activated red, blue, and white strobe lighting on their car and also activated an emergency siren.

30. The Plaintiff had previously observed that the car purporting to be an emergency vehicle had no identifying markings.

31. As such, the Plaintiff called Wescom dispatch to verify that the Defendants' car was a bonafide emergency vehicle.

32. Wescom dispatch was unable to verify the identity of the car in question; however, the Plaintiff stopped his car on the shoulder of the on ramp to verify for himself.

33. The Defendants then walked up to the Plaintiff's car wearing blue jeans and other common civilian articles of clothing, along with tactical-style ballistic vests and firearms holstered to their hips.

34. The Plaintiff asked Cody Cammack, who approached on the left side of the car, for the name and badge number of his person, to which Cammack provided the information.

35. Cammack then asked the Plaintiff for a "driver's license" and "proof of insurance".

36. The Plaintiff asked Cammack what "the PC for the stop" was and Cammack indicated that he believed the front windshield of the Plaintiff's car was "tinted" and that was probable cause for the seizure.

37. The Plaintiff acknowledged Cammack's response and began to retrieve identification under the threat of violence, duress and coercion.

38. Cammack then ordered the Plaintiff to "step out of the vehicle".

39. The Plaintiff, under duress, coercion and the threat of violence obliged to the purported order and exited the car.

6

40. Prior to exiting, the Plaintiff told Cammack and Juergens, who was standing and watching from the opposite side of the car, that he was also bearing a firearm.

41. Cammack told the Plaintiff not, "to reach" for the firearm and to exit the car as previously ordered.

42. The Plaintiff was instructed to walk back to the hood of the Defendants' car and place his hands on the hood.

43. The Plaintiff had his badge and peace officer identification credentials in his hand as he followed the Defendant's purported order.

44. The Plaintiff placed his credentials on the hood of the Defendant's car and followed the Defendant's purported order under threat of violence, duress, and coercion.

45. Cammack then disarmed the Plaintiff and searched the clothing and other possessions of the Plaintiff.

46. Cammack then asked the Plaintiff if he had "smoked any weed" recently or if there were drugs, paraphernalia, or maybe some "shake" in the car.

47. The Plaintiff told Cammack that he did not give his consent for Cammack or Juergens to search his car.

48. The Plaintiff then provided identification of his person in the form of an Illinois State Firearm Owner's Identification Card.

49. Cammack radioed to Wescom dispatch the name and date of birth of the Plaintiff's person.

50. Wescom dispatch then radioed back that the Plaintiff's person's driver's license had been surrendered.

51. Cammack then asked the Plaintiff if the Plaintiff [Plaintiff's person] had a "valid driver's license".

7

52. The Plaintiff then showed Cammack an electronic copy of an Alabama State temporary driver's license issued for his person.

53. Cammack then radioed to dispatch the information displayed on the copy of the driver's license.

54. Wescom dispatch then radioed Cammack back and indicated that the "commercial license" was "non-issued".

55. At that point in time, Cammack placed the Plaintiff in handcuffs.

56. Cammack then radioed to Wescom dispatch about the status of the Plaintiff's firearms credentials.

57. Wescom dispatch came over the radio indicating that the FOID and Concealed Carry Applications had been canceled.

58. Cammack then radioed for a "marked unit with a cage" to come and transport the Plaintiff.

59. Cammack and Juergens then seized the Plaintiff's peace officer credentials and other identification documents specifically issued for his person.

60. The Defendants did not ask the Plaintiff whether he was on duty, or what business he was conducting.

61. The Defendants did not tell the Plaintiff why he was placed in handcuffs and, upon information and belief, arrested.

62. The Plaintiff was escorted to and ushered inside a marked VILLAGE OF BOLINGBROOK police vehicle.

63. While inside the police vehicle, the Plaintiff saw on the computer a Law Enforcement Agencies Data System (LEADS) display and readout of the information for his person, specifically a readout of the Plaintiff's person's driver's license information.

64. The Plaintiff read and comprehended that the data on the computer indicated that his person's driver's license was valid.

65. The Plaintiff was transported to the VILLAGE OF BOLINGBROOK police department where he was further searched, his property seized, and his biological data in the form of photographs and fingerprints taken.

66. The Defendants eventually met the Plaintiff in the holding area of the jail and escorted the Plaintiff to an interrogation room.

67. There the Defendants advised the Plaintiff of his rights and the privileges of his person.

68. At the conclusion of the Defendants' interrogation, the Plaintiff disclosed to the Defendants that they had impeded in the Plaintiff's investigation into a federal fugitive of the law and while that fact existed, the Defendants may benefit from qualified immunity given the time in which the information was disclosed, notwithstanding the fact the Defendants saw and held in their hand the peace officer credentials of the Plaintiff; but in regards to the unlawful arrest and other tortious activity, they would not benefit from such immunity.

69. The Plaintiff was held in the jail for approximately three hours.

70. The Plaintiff's person was charged with the violation of STATE OF ILLINOIS statutes: 625 ILCS 5/12-503(a) and (a-5) under the same chapter.

71. The full faith and credit of the Plaintiff's person, BLAKE A BILLUPS, was used to issue a personal recognizance bond with a face value of two thousand-five hundred Federal

9

Reserve Notes for the release of the Plaintiff's body from captivity; no coupon rate or maturity date was disclosed to the Plaintiff at the time of the issuance.

72. The Plaintiff placed his signature, on behalf and as the holder of the title of BLAKE A BILLUPS, on the instrument and contemporaneously reserved all of his rights without prejudice as codified at U.C.C. 1-308.

73. The Defendants accepted the Plaintiff's signature and upon said acceptance released the Plaintiff from his captivity.

74. The Plaintiff asked the Defendants for the return of his firearm and firearm owner identification/concealed carry permit license card that was issued for his person.

75. The Defendants declined to give the Plaintiff his property back.

76. The employer of the defendants, the VILLAGE OF BOLINGBROOK, by and through Cammack and Juergens, additionally demanded a cash bond in the amount of three hundred Federal Reserve Notes in addition to fees, in the amount of one-hundred and fifty-five federal reserve notes or equivalent, payable to HEARTBREAK TOWING, INC for the release of the Plaintiff's car.

77. On or about May 3rd, 2022, BLAKE A BILLUPS, by way of the Plaintiff, exchanged three-hundred Federal Reserve Notes with the VILLAGE OF BOLINGBROOK and one-hundred and fifty-five Federal Reserve Notes with HEARTBREAK TOWING, INC for the release of the Plaintiff's car.

78. On or about June 2nd, 2022, at or around 2:10pm, Frederick Harvey presided over the state trial court proceeding at Will county for case number 22TR14199.

79. Harvey made mention to the Plaintiff of a criminal matter that was before the court, and the Plaintiff stated on and for the record that no criminal complaint, indictment, or information had been filed in the court regarding such a charge.

80. Harvey explained that the bail bond issued by the Plaintiff and the receipt thereof allowed Lauren Senko to proceed even with the criminal charge having not been formally charged or filed in the court and for the court to proceed in a matter which was not on its docket.

81. The Plaintiff made oral objections to the trial court's jurisdicition to proceed in such a manner and move the court to rule on his motion to dismiss for lack of jurisdiction.

82. On or about June 2nd, 2022, at or around 2:15pm, Laren Senko, in open court at Will County, tendered to the Plaintiff an unfiled copy of a criminal criminal complaint made by way of an H. Cunningham.

83. On or about June 2nd, 2022, at or around 3:07pm, after the parties of the trial court proceeding at Will County concluded their business before the court, a copy of the same unfiled criminal complaint tendered to the Plaintiff in open court was filed with the WILL COUNTY CIRCUIT COURT CLERK.

84. Heretofore, no criminal complaint has been filed by Cody Cammack or Jeffrey Juergens.

85. On or about June 2nd, 2022, Amanda Michalek notarized a criminal complaint made by an H. Cunningham, now known to be, Henry Cunningham.

86. On or about June 2nd, 2022, Lori Sherman recorded minutes on the docket of the circuit court for cases 22CM542 and 22TR14199 and recorded the following language, respectively: "...Defendant enters plea of not guilty. Case is set for pretrial..." and "Defendant enters plea of not guilty. Case is set for hearing on defendant's motion over State's objection...".

87. According to the affidavits of witnesses and transcriptions by the court reporter for the June 2nd, 2022 proceedings, no arraignment was held or otherwise pleas entered and the matter was set for a hearing on the Plaintiff's motion to dismiss for lack of jurisdiction; however, the motion was set for hearing on the State's motion over the Plaintiff's objection.

Cause of Action I -- 42 USC § 1983, 42 USC § 1985<br>False Dentention and Arrest

88. The Plaintiff realleges and restates the foregoing jurisdictional and factual allegations.

89. The actions of Cody Cammack and Jeffrey Juergens in falsely detaining and arresting Blake Atlas Billups without reasonable suspicion or probable cause violated the Plaintiff's protected rights under Article IV of the Bill of Rights of the United States Constitution to be free from unreasonable seizures, and thus violated 42 USC § 1983, 42 USC § 1985, 18 USC § 241, and 18 USC § 242.

90. The Defendants' actions lacked objective reasonableness as a reasonable municipal police officer could know that to detain and arrest a person without reasonable suspicion or probable cause that the person had committed a crime would violate said person's protected Fourth Amendment right.

91. The Plaintiff was harmed as a result of the Defendants' actions.

92. WHEREFORE, the Plaintiff moves this honorable court to enter a judgment for punitive and compensatory damages against Cody Cammack and Jeffrey Juergens in their individual and official capacities, respectively, to award the Plaintiff his attorney's fees and costs, and to provide further relief that this court may deem reasonable and just under the circumstances.

## Cause of Action II -- 42 USC § 1983, 42 USC § 1985
### Unreasonable Search

93. The Plaintiff realleges and restates the foregoing jurisdictional and factual allegations.

94. The actions of Cody Cammack and Jeffrey Juergens in searching the car and the person of the Plaintiff in the absence of a warrant or probable cause that the Plaintiff had committed a crime, where also the plaintiff expressly told the defendants that he did not consent to any search, violated the Plaintiff's protected rights Under Article IV of the Bill of Rights to the United States Constitution to be free from unreasonable searches, and thus violated 42 USC § 1983, 42 USC § 1985, 18 USC § 241, and 18 USC § 242.

95. The Plaintiff was harmed as a result of the Defendants' actions.

96. The Defendants' actions lacked objective reasonableness as a reasonable municipal police officer could know that to search the person or property of a person without reasonable suspicion or probable cause that the person had committed a crime would violate said person's protected Fourth Amendment right.

97. WHEREFORE, the Plaintiff moves this honorable court to enter a judgment for punitive and compensatory damages against Cody Cammack and Jeffrey Juergens in there individual and official capacities, respectively, to award the Plaintiff his attorney's fees and costs, and to provide further relief that this court may deem reasonable and just under the circumstances.

## Cause of Action III -- 42 USC § 1983, 42 USC § 1985
### Deprivation of Liberty and Property Without Due Process of Law

98. The Plaintiff restates and realleges the foregoing factual and jurisdictional allegations.

99. The actions of Cody Cammack and Jeffrey Juergens in custodially arresting the plaintiff, restraining the plaintiff in wrist restraints, later transporting the plaintiff to a jail cell and

restraining him of his liberty for several hours, taking the plaintiff's firearm without his consent, taking the plaintiff's identification card without his consent, and also the plaintiff's car without his consent constitutes an abrogation of the plaintiff's protected Fourteenth Amendment right under the Constitution for the United States of America to not be deprived of liberty and property without due process of law, and thus a violation of 42 USC § 1983, 42 USC § 1985, 18 USC § 241, and 18 USC § 242.

100. The Plaintiff was harmed as a result of the actions of the Defendants.

101. The Defendants' actions lacked objective reasonableness as a reasonable municipal police officer could know that to restrain a person against his will and take his property without his consent, where there is no probable or otherwise lawfully just cause to do so, would violate said person's protected Fourteenth Amendment right.

102. WHEREFORE, the Plaintiff moves this honorable court to enter a judgment for punitive and compensatory damages against Cody Cammack and Jeffrey Juergens in their individual and official capacities, respectively, to award the Plaintiff his attorney's fees and costs, and to provide further relief that this court may deem reasonable and just under the circumstances.

Cause of Action IV -- 42 USC § 1983, 42 USC § 1985
Abrogation of Second Amendment

103. The Plaintiff restates and realleges the foregoing factual and jurisdictional allegations.

104. The acts of Cody Cammack and Jeffrey Juergens in taking the Plaintiff's firearm without his consent, without a warrant or probable cause and thereafter withholding the possession of the firearm from the Plaintiff constitutes an infringement upon the Plaintiff's protected right under Article II of the Bill of Rights to the Constitution for the United

States of America and thus constitutes violations of 42 USC § 1983, 42 USC § 1985, 18 USC § 241, and 18 USC § 242.

105. The Plaintiff was harmed, proximately caused by the Defendants' actions.

106. The Defendants' actions lacked objective reasonableness as a reasonable municipal police officer could know that to take the firearm of a person without warrant, probable cause, or consent would violate said person's protected Second Amendment right.

107. WHEREFORE, the Plaintiff moves this honorable court to enter a judgment for punitive and compensatory damages against Cody Cammack and Jeffrey Juergens in their individual and official capacities, respectively, to award the Plaintiff his attorney's fees and costs, and to provide further relief that this court may deem reasonable and just under the circumstances.

Cause of Action V -- Common Law Trespass on the Person
Assault and Battery - State Law Claim

108. The Plaintiff restates and realleges the foregoing jurisdictional and factual allegations.

109. For that the Defendants, Cody Cammack and Jeffrey Juergens, did, on the second day of May, A.D. 2022, with force and arms at Bolingbrook in Will County, engage in conduct which reasonably placed the Plaintiff in apprehension of receiving a battery and did in fact make a battery upon the Plaintiff, and then and there, without lawful justification, made physical conduct with the Plainitff of an insulting and provoking nature.

110. WHEREFORE, the Plaintiff moves this honorable court to enter a judgment awarding compensatory and punitive damages against said Defendants, award the Plaintiff attorney fees and costs, and provide further relief that may be deemed reasonable and just under the circumstances.

### Cause of Action VI -- 42 USC § 1983, 1985; 18 USC § 241,242
### Common Law Fraud and Fraud on the Court - State Law Claim

111. The Plaintiff restates and realleges the foregoing jurisdictional and factual allegations.

112. The actions of Lori Sherman in entering on the roll of the court representations in which she knew to be false did deprive the Plaintiff of his protected right under Article VI of the Bill of Rights and did also abrogate the Plaintiff's protected right under the Fourteenth Amendment of the Federal Constitution whereby he was deprived of liberty and property without due process of law and did also abrogate the the Plaintiff's protected right under Article II of the Bill of Rights to keep and bear arms.

113. The acts of Lauren Senko in tendering to the Plaintiff, in open court, an alleged criminal complaint in which she knew to be false and defective on its face did abrogate the Plaintiff's protected rights under Article II, IV, and VI of the Bill of Rights of the United States Constitution and the Plaintiff's protected Fourteenth Amendment right under the same constitution.

114. The acts of Frederick Harvey in presiding over the court and allowing the court to proceed, over the Plaintiff's objections, in matters in which he knew it lacked jurisdiction to do so did abrogate the Plaintiff's protected rights under Article II, IV, and VI of the Bill of Rights of the United States Constitution and the Plaintiff's protected Fourteenth Amendment right under the same constitution.

115. The acts of Henry Cunningham in making a criminal complaint against Blake Atlas Billups in which he knew he lacked first hand knowledge, knew that no crime had been committed against him or any other man or woman, and where he made the complaint under oath under a fictitious name did abrogate the Plaintiff's protected rights under

Article II, IV, and VI of the Bill of Rights of the United States Constitution and the Plaintiff's protected Fourteenth Amendment right under the same constitution.

116. The acts of Amanda Michalek in acting contemporaneously as a secretary for the same employer as Lauren Senko and as a Notary Public State of Illinois and notarizing a criminal complaint in which she knew the name and identity of the person who signed the complaint to be false did abrogate the Plaintiff's protected rights under Article II, IV, and VI of the Bill of Rights of the United States Constitution and the Plaintiff's protected Fourteenth Amendment right under the same constitution.

117. Each of the defendants' acts under this cause of action constitutes an act in furtherance of an agreement between one another to deprive the Plaintiff of his aforementioned protected rights, under color of law, which is a violation of 18 USC § 241 and 18 USC § 242.

118. The Defendants' actions lacked objective reasonableness as reasonable officers of the court and reasonable municipal employee could know that to engage in the aforementioned conduct without any lawful or otherwise just cause would violate the Plaintiff's protected rights.

119. Plaintiff was harmed as a result of the actions of the Defendants.

120. WHEREFORE, the Plaintiff moves this honorable court to enter a judgment awarding compensatory and punitive damages against said Defendants, resoecitvely, award the Plaintiff attorney fees and costs, and provide further relief that may be deemed reasonable and just under the circumstances.

### Cause of Action VII - Monell Claim

121. The Plaintiff restates and realleges the foregoing jurisdictional and factual allegations.

122. Each Defendant, save for Frederick Vincent Harvey, is sued in their official capacity.

123. The various municipal corporations organized in the State of Illinois that employ said Defendants and are subject to suit under *Monell* are the VILLAGE OF BOLINGBROOK and COUNTY OF WILL.

124. It is clear that there has been a failure by policymakers of both municipal corporations to properly train or supervise their subordinates, amounting to "deliberate indifference" to the rights of those who come in contact with the municipal employees.

125. WHEREFORE, the Plaintiff moves this honorable court to enter an order awarding compensatory damages to the Plaintiff against the VILLAGE OF BOLINGBROOK and COUNTY OF WILL, award Plaintiff his attorney's fees and costs, and any further relief that may be deemed reasonable and just under the circumstances.

**RELIEF REQUESTED**

WHEREFORE, Plaintiff moves this Court to:

(1) Enter a judgment in Plaintiff's favor and against each named Defendant in their respective capacities related to the causes of action stated herein and also award Plaintiff compensatory, punitive damages and costs based on the Defendants' actual abuse of police powers, misconduct and other tortious acts in an amount greater than $100,000; and

(2) Grant the Plaintiff relief from a final judgment, order or proceedings under Fed. R. Civ. P. 60 for any of the provisions under the rule; and

(3) Grant any further relief that the Court may deem reasonable and just under the circumstances.

## DEMAND FOR TRIAL BY JURY

The Plaintiff hereby demands a trial by jury in the above-entitled matters as to all issues and claims for which a trial by jury is cognizable under the law.

Dated: July 6, 2022

Respectfully submitted,

*Blake-Atlas: Billups, All Rights Reserved, without Prejudice*
Blake Atlas Billups, All Rights Reserved, Without Prejudice.
1147 Brook Forest Avenue No. 350
Shorewood, Illinois
312-446-8433
blakeatlas@protonmail.com